# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# WHEELING

**KEVIN MCWILLIAMS,**

        Petitioner,

v.                                       Civil Action No.: 5:18cv147
                                           (Judge Stamp)

**JENNIFER SAAD, Warden,**

        Respondent.

## REPORT AND RECOMMENDATION

### I.   INTRODUCTION

On August 31, 2018, Petitioner Kevin McWilliams ("Petitioner"), acting *pro se*, filed a Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241 [ECF No. 1] (the "Petition"). On September 24, 2018, Petitioner paid the $5 filing fee. On February 11, 2019, the Court entered an Order to Show Cause why the Petition should not be granted. ECF No. 12. On March 1, 2019, Respondent filed a response by filing a Motion to Dismiss the Petition or, in the Alternative, a Motion for Summary Judgment. ECF No. 17. On March 4, 2019, the Court entered an Order and Roseboro Notice [ECF No. 19], informing Petitioner of his right and obligation to respond to the Government's motion. On March 25, 2019, Petitioner filed his Response. ECF No. 21. In addition, on September 18, 2019, Petitioner filed a motion requesting that this Court view his claim considering Lennear v. Wilson, 2019 WL 3980165 (4th Cir. August 23, 2019). That motion has been granted by separate order. The matter is now before the undersigned United States Magistrate Judge for a Report and Recommendation to the District Judge

pursuant to 28 U.S.C. § 636(b)(1)(B) and LR PL P 2. For the reasons set forth below, the undersigned recommends that the Petition be denied.

## II.   BACKGROUND

On January 10, 2018, FCI Gilmer staff observed Petitioner and another inmate striking each other. Later that same day, staff delivered Incident Report 3076173 to Petitioner. The report gave the following description of the incident:

> On the above date at 0718 am I observed inmate [ ] and McWilliams, Kevin in the center of the compound striking each other with closed fist to the head and upper torso area of the body. Both inmates were given multiple orders to cease fighting and submit to hand restraints. Both inmates refused staff orders and were placed on the ground to regain control and then escorted to SHU.

ECF No. 18-1 at 3.  The Incident Report charged Petitioner with Fighting, Prohibited Act Code 201. Id.  An investigation was conducted that same day by Lt. Carpenter, who advised Petitioner of his right to remain silent at all stages of the disciplinary process. Petitioner stated he understood his rights. Petitioner stated: "The guy hit me first, I was just defending myself." Id. at p. 4. Lt. Carpenter observed that Petitioner displayed a good attitude during the investigation. Id. On January 15, 2018, Petitioner's unit disciplinary committee referred the charges to the Disciplinary Hearing Officer ("DHO"). Id. at p. 3.

Staff notified Petitioner that a DHO would conduct a disciplinary hearing as soon as possible. ECF No. 18-1 at p. 6. The notice advised Petitioner of his rights during a DHO hearing. Id. at p. 7. Petitioner indicated that he wished to have Counselor Sligar as his staff representative but declined to call witnesses. Id. at p. 6.

On February 7, 2018, the DHO held Petitioner's disciplinary hearing. ECF No. 18-1 at p. 10.  Ultimately, the DHO found that Petitioner was guilty of the act as charged

2

and sanctioned him with the loss of 27 days Good Conduct Time. Id. at p. 12.

The Hearing Report was completed on April 26, 2018. ECF No. 18-1 at p. 12. The DHO detailed the evidence upon which he had relied when finding Petitioner guilty. Id. at 11. Specifically, the DHO stated that he had relied upon, *inter alia*, the Incident Report, Petitioner's testimony, the information provided by Counselor Sligar, photo sheets, and memoranda dated January 10, 2018 from six BOP staff members. Id. The report also included the reasons for Petitioner's sanctions. To illustrate, the report provided that:

> The action/behavior on the part of any inmate to become involved in a fight with any other inmate or person poses a threat to the health, safety, and welfare of not only him, but all other inmates and staff within the institution and disrupts the orderly running of the institution. In the past, fights between two individuals have expanded to include others which created a larger problem for staff to resolve.

ECF No. 18-1 at 12.

Petitioner appealed the DHO's report as required. In his appeal, he stated that was not fighting, but was protecting himself from another inmate. He also stated that the DHO's decision was based on insufficient facts and review of the video footage would exonerate him. However, in response, the Administrator of National Inmate Appeals found that a review of the video for this incident shows that although Petitioner had his hands to his side, he did at some point fight back. In addition, the response found that Petitioner's actions and behavior during this incident was that of a person fighting with another individual.  In addition, the response determined that Petitioner's Due Process rights were upheld during the discipline process, and the sanctions imposed were commensurate to the severity level of the offense committed and in compliance with policy. Therefore, his appeal was denied. ECF No. 1-2 at p. 2.

## III  **PLEADINGS**

A.     **The Petition**

Petitioner asserts that his administrative appeal was denied in error. Petitioner cites to "Program Statement 9.3.12-Constitutional Rights of Prisoners," which states that that "at a disciplinary hearing, one prisoner might assert 'a self-defense'. ECF No. [1] Petitioner maintains that if the surveillance footage was properly observed, it would show that he stood alone with his hands inside his pockets at his side. When another inmate finished fighting with a third inmate, he then turned on Petitioner and started swinging. Petitioner maintains that he attempted to avoid the punches, Petitioner then hit him one time and the inmate was unconscious of the ground. Petitioner further maintains that on appeal, the BOP simply repeated what was stated in the DHO report and failed to properly investigate his claim thereby violating his right to due process. Petitioner also alleges that the other inmate, who he refers to as the aggressor, had his infraction expunged. Therefore, Petitioner alleges that means that he had an altercation with himself because the aggressor's infraction was expunged as if he never assaulted Petitioner.  For relief, Petitioner requests that this Court grant his petition, order his infraction for Code 201 expunged and reinstate his 27 days of good conduct time.

B.     **Respondent's Motion to Dismiss or for Summary Judgment**

Respondent advances the following arguments in response to the petition:

1. Petitioner does not adequately allege, nor can he establish, that he was deprived of any recognized due process protection available to a federal

---

[1] It appears that the Petitioner incorrectly believes that this is part of a BOP Program Statement. Instead, it appears to be taken from a hornbook.

4

inmate facing discipline.

2. Adequate evidence supports the disciplinary sanctions against Petitioner.

## C. Petitioner's Response

Petitioner reiterates his reference to Program Statement 9.3.12-Constitutional Rights of Prisoners and quotes: "at the disciplinary hearing, one prisoner might assert 'self-defense'. The general rule of criminal law is that one who is free from fault is privileged to use reasonable and necessary force to defend him-(or her) self against personal harm threatened by the unlawful act of another." ECF No. 21 at p. 1. He further alleges that according to the Program Statement he was defending himself and was without fault. He also alleges that had the footage been preserved, as requested and by policy, all the inconsistencies within the report would have been exposed. Finally, it appears that Petitioner alleges that the footage was not preserved because he claimed that he was assaulted by correctional officers.

## IV. STANDARD OF REVIEW

### 1. Motion to Dismiss

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations" but must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Id. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir. 2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted

unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

### 2. Summary Judgment

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 (1977). So, too, has the Fourth Circuit Court of Appeals. Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242-252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light

most favorable to the party opposing the motion. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986).

## V. DISCUSSION

Prison disciplinary proceedings are not criminal prosecutions. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Therefore, prisoners do not enjoy "the full panoply of due process rights [in prison disciplinary proceedings that are] due a defendant in . . . [criminal] proceedings." Id. When a prison disciplinary hearing may result in the loss of good time credit, due process requires the following:

1. giving the prisoner written notice of the charges at least twenty-four hours before he appears for his disciplinary hearing;

2. providing the prisoner a written statement by the fact finders as to the evidence relied on and reasons for the disciplinary action;

3. allowing the prisoner to call witnesses and present documentary evidence in his defense, when permitting him to do so will not be an undue hazard to institutional safety or correctional goals;

4. permitting the prisoner the aid of a fellow prisoner, or if that is forbidden, aid from staff or a competent inmate designated by staff, if the prisoner is illiterate or the complexity of the issue makes it unlikely that the prisoner will be able to collect and present the evidence necessary for an adequate comprehension of the case; and

5. providing impartial fact finders.

Id. at 564-571.

In the present case, the undersigned finds that Petitioner was provided all the due process required of disciplinary proceedings. First, Petitioner received written notice of the charges against him more than twenty-four hours before his disciplinary hearing. Petitioner's disciplinary hearing was held on February 7, 2018, and he was provided with his Incident Report on January 10, 2018.

8

Second, after the disciplinary hearing, Petitioner was provided with a report of what occurred during the hearing, which included the evidence upon which the DHO had relied and the reasons for Petitioner's sanctions. Third, Petitioner was advised of his right to call witnesses and present documentary evidence at the disciplinary hearing but declined to present witnesses or documentary evidence. Fourth, Petitioner was instructed of and asserted his right to a staff representative during the hearing. Finally, Petitioner was provided with an impartial fact finder during his disciplinary hearings because, in accordance with BOP regulations, the DHO was not a reporting official, investigating officer, UDC member or witness and did not play a role in referring the charges. See 28 C.F.R. § 541.16(b).

The results of a prison disciplinary proceeding will be upheld so long as there is "some evidence" to support the decision. Superintendent v. Hill, 472 U.S. 455. (1985). When determining whether this standard is satisfied:

> [No] examination of the entire record, independent assessment of the credibility of the witnesses, or weighing of the evidence [is needed]. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached . . . .

Id. at 457. In this case, the DHO found Petitioner had committed the act of fighting with another person, in violation of Prohibited Act Code § 201. During the DHO hearing, Petitioner stated: "yes we were fighting, but I was trying to avoid it." The DHO considered Petitioner's defense that he was trying to avoid the fight and also considered the information provided by Counselor Slinger, Petitioner's staff representative, which indicated that he did initially try to avoid engaging in the fight. However, the DHO found that he could not ignore that fact that Petitioner did eventually engage in the fight and strike the other inmate. Furthermore, the DHO acknowledged that the other inmate was

9

the aggressor but found that Petitioner still made the decision to become a participant by striking him back. Accordingly, the undersigned finds that the DHO's decision is supported by some evidence.

In conclusion, the undersigned recognizes that Petitioner has asked this Court to view his claim pursuant to the decision in <u>Lennear</u>, a published Fourth Circuit opinion issued last month. The <u>Lennear</u> decision also involved a disciplinary proceeding. The opinion notes that according to his administrative appeal, the appellant asked at the investigation stage, the UDC stage and at the DHO stage that the cameras be viewed to validate his entire statement. In summary, the decision provides that procedural due process protections afforded to inmates in disciplinary proceedings encompass a qualified right of access to video surveillance evidence and to compel official consideration of video surveillance evidence.

The decision in Lennear is clearly distinguishable from Petitioner's disciplinary proceedings. There is nothing in the record to suggest that he requested access to the video of the incident in question. Moreover, in <u>Lennear</u>, no BOP official reviewed the video.[2] However, in the instant case, Petitioner's chosen staff representative reviewed the tape, and confirmed Petitioner's description of the events as they transpired. The fact that the DHO was not persuaded by Petitioner's argument that he acted in self-defense does not entitle Petitioner to the relief he requests.

## VI. <u>RECOMMENDATION</u>

For the foregoing reasons, it is hereby recommended that Respondent's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment [ECF No. 17] be

---

[2] The appellant alleged that he was told that video footage was only reviewed in incidents involving knives.

**GRANTED**, and the Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241 [ECF No. 1] be **DISMISSED WITH PREJUDICE**.

Within fourteen (14) days after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to provide a copy of this Report and Recommendation to the parties who appear *pro se* and all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

DATE:  September 27, 2019

*/s/ James P. Mazzone*
JAMES P. MAZZONE
UNITED STATES MAGISTRATE JUDGE